Filed 12/15/14  P. v. Spivey CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B252500 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA064306) |
| v. | |
| DAVID WAYNE SPIVEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Remanded for resentencing.

Edward H. Schulman, under appointment for the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews  and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

David Wayne Spivey was convicted following a jury trial of first degree murder, shooting at an inhabited dwelling and conspiracy to commit murder with true findings on related firearm-use and criminal-street-gang enhancement allegations. The trial court sentenced Spivey, who was 17 years old at the time of the crimes and 22 years old when originally sentenced in November 2010, to an aggregate state prison term of 58 years to life: 25 years to life for first degree murder, plus 25 years to life for the firearm-use enhancement under section Penal Code 12022.53, subdivisions (d) and (e)(1),[1] plus the lower term of three years for shooting at an inhabited dwelling and an additional five years for the gang enhancement on that offense.[2]

In Spivey's prior appeal, *People v. Spivey* (May 22, 2012, modified June 18, 2012, B229312) (nonpub. opn.), we rejected several challenges to his sentence but remanded for resentencing in light of the trial court's failure to impose a proper sentence on the count for shooting at an inhabited dwelling, explaining, "[W]e cannot tell from this record whether the court would have imposed the sentence on count three to run consecutively or concurrently had it realized the proper sentence was an indeterminate term of life in prison with a minimum parole eligibility of 15 years" rather than a determinate term of eight years.

On remand the trial court sentenced Spivey to an aggregate state prison term of 65 years to life, electing to impose the sentence for shooting at an inhabited dwelling to run consecutively to the sentence for first degree murder. Spivey again appeals, arguing the new sentence is the functional equivalent of life without the possibility of parole and violates the Eight Amendment's prohibition against cruel and unusual punishment because it was imposed without considering the mitigating factors relating to the distinctive attributes of a juvenile offender identified in *Miller v. Alabama* (2012) 567 U.S. __ [132 S.Ct. 2455, 183 L.Ed.2d 407] (*Miller*), *People v. Gutierrez* (2014)

---

[1] Statutory references are to the Penal Code.

[2] The court stayed the sentence for conspiracy to commit murder pursuant to section 654.

58 Cal.4th 1354 (*Gutierrez*) and *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*). We remand once again for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to Spivey's initial sentencing on November 1, 2010, the trial court heard argument from counsel and a statement from Spivey's mother. The court advised the parties it had read and considered the probation report, the parties' sentencing memoranda and 10 letters submitted on Spivey's behalf. The parties stipulated no supplemental probation report was necessary. As discussed, the court sentenced Spivey to an aggregate state prison term of 58 years to life.

In our original opinion in Spivey's first appeal we determined the court had improperly imposed a consecutive eight-year sentence for shooting at an inhabited dwelling with a criminal street gang enhancement. The court had selected the lower term of three years and added the five-year enhancement pursuant to section 186.22, subdivision (b)(1)(B), for a serious felony. However, section 186.22, subdivision (b)(4)(B), specifies an alternate punishment of 15 years to life for certain crimes, including a violation of section 246 (discharging a firearm at an inhabited dwelling). Accordingly, we modified the judgment by replacing the eight-year consecutive term imposed by the trial court on that count with the proper indeterminate life term (that is, 15 years to life), and affirmed the judgment as modified.

Spivey petitioned for rehearing, arguing in light of his youth and the trial court's decision to impose the lower term of three years for shooting at an inhabited dwelling, the record was not clear whether the trial court would have imposed the sentence on that count to run consecutively or concurrently had it realized the proper sentence was an indeterminate term of 15 years to life. We agreed, modified our opinion and remanded the matter to the trial court with directions to exercise its discretion to impose the term for that count to run either concurrently or consecutively to the 50-year-to-life sentence previously imposed for first degree murder with the firearm-use enhancement.

On remand Spivey filed a new sentencing memorandum in which he urged the trial court to impose the term concurrently. Spivey argued imposition of the additional

3

indeterminate life term to run consecutively would be excessive in light of his age and the resulting aggregate state prison sentence of 65 years to life would violate the Eighth Amendment's prohibition on cruel and unusual punishment within the meaning of *Miller, supra,* 567 U.S. __ [132 S.Ct. 2455], *Graham v. Florida* (2010) 560 U.S. 48 [130 S.Ct. 2011, 176 L.Ed.2d 825] (*Graham*), and *Caballero, supra,* 55 Cal.4th 262.

After considering Spivey's memorandum, the trial court stated it believed a consecutive sentence was warranted for the reasons it had articulated at the original sentencing hearing in 2010. Without commenting on his Eighth Amendment argument, the court sentenced Spivey to an aggregate state prison term of 65 years to life.

## DISCUSSION

1. *Governing Legal Principles*

    a. *The United States Supreme Court cases:  Graham and Miller*

The Eighth Amendment's ban on cruel and unusual punishment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime. (*Ewing v. California* (2003) 538 U.S. 11, 20-21 [123 S.Ct. 1179, 155 L.Ed.2sd 108].)[3]  In *Graham, supra,* 560 U.S. 48, the United States Supreme Court held sentencing a juvenile to life without parole for a nonhomicide offense violates the Eighth Amendment's prohibition of cruel and unusual punishment. (*Id.* at p. 82.)  Central to this result was the Court's appreciation for the "fundamental differences between juvenile and adult minds" and its recognition that juveniles are "more capable of change than are adults . . . ." (*Id.* at p. 68.)

The Supreme Court subsequently extended the reasoning of *Graham* to hold a mandatory sentence of life imprisonment without the possibility of parole for a juvenile convicted of murder also violates the Eighth Amendment. (*Miller, supra*, 567 U.S. at p. __ [132 S.Ct. at pp. 2467-2468].)  As the Court explained, such mandatory penalties "preclude[] consideration of [a juvenile's] chronological age and its hallmark features—

---

[3]     The Eighth Amendment applies to the states. (*Robinson v. California* (1962) 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed.2d 758]; *Caballero, supra*, 55 Cal.4th at p. 265, fn. 1.)

4

among them, immaturity, impetuosity, and failure to appreciate risks and consequences." (*Id.* at p. 2468.) The Court concluded *Graham*'s directive to consider the unique characteristics and vulnerabilities of juveniles is not "crime-specific" and its "reasoning implicates any life-without-parole sentence for a juvenile . . . ." (*Id.* at p. 2458.) Thus, although the Court did not categorically prohibit the punishment of life imprisonment without the possibility of parole for juvenile offenders convicted of murder, it held the sentencing court in those cases must consider the juvenile's age and youthful characteristics before imposing such a sentence. (*Id*. at pp. 2467, 2471.)[4]

       b. *The California Supreme Court's decision in Caballeros*

In *Caballero, supra,* 55 Cal.4th 262, 268-269, the California Supreme Court held a 110-year-to-life sentence imposed on a juvenile convicted of nonhomicide offenses (three gang-related attempted murders) was the functional equivalent of a life without parole sentence and, therefore, was subject to the constitutional constraints articulated in *Graham* and *Miller.* (*Caballero,* at pp. 268-269.) The Court rejected the argument a cumulative sentence for distinct crimes does not present an Eighth Amendment issue and held, when a juvenile is sentenced to minimum terms that exceed his or her life

---

[4]    The *Miller* Court summarized the individual sentencing factors (the *Miller* factors) that should be considered by courts in sentencing juveniles: (1) the actual age of the offender and the "hallmark features" of youth, including "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the "family and home environment" that surround the offender; (3) "the circumstances of the homicide offense, including the extent of [the juvenile offender's] participation in the conduct and the way familial and peer pressures may have affected [the offender]"; (4) information that suggests whether the offender may have been charged with or convicted of a lesser offense but for the "incompetencies associated with youth—for example, [the offender's] inability to deal with police officers or prosecutors (including a plea agreement) or [the offender's] incapacity to assist [his or her] own attorneys"; and (5) "the possibility of rehabilitation." (*Miller, supra*, 567 U.S. at p. ___ [132 S.Ct. at p. 2468].)

In *Gutierrez, supra*, 58 Cal.4th 1354, the California Supreme Court held section 190.5, subdivision (b), which authorizes the trial court, in its discretion, to impose a sentence of either life without possibility of parole or 25 years to life on a defendant who was 16- or 17-years old at the time he or she committed first degree murder with one or more special circumstances, "authorizes and indeed requires consideration of the *Miller* factors." (*Gutierrez*, at p. 1387.)

expectancy for nonhomicide offenses, the punishment is unconstitutional under *Graham* and *Miller*. (*Caballero,* at pp. 268-269.) As the Court explained, "[T]he state may not deprive [juveniles] at sentencing of a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future." (*Id.* at p. 268.) A sentencing court must consider mitigating circumstances before determining at which point juveniles can seek parole, including their age, whether they were a direct perpetrator or an aider and abettor, and their physical and mental development. (*Ibid.*) The *Caballero* Court also noted the United States Supreme Court in *Miller* "requires sentencers in homicide cases 'to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" (*Id.* at p. 268, fn. 4.)

       c. *Section 3051*

Responding to *Graham*, *Miller* and *Caballero* the California Legislature enacted Senate Bill No. 260 (2013-2014 Reg. Sess), adding section 3051 to the Penal Code effective January 1, 2014 and creating a "parole eligibility mechanism" that allows minors sentenced to a lengthy determinate term or an indeterminate life term to secure their release on parole after serving a prescribed term of confinement if they can demonstrate they have "rehabilitated and gained maturity." (See Stats. 2013, ch. 312, § 1 ["[i]t is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established"].) Section 3051 specifically provides "any prisoner who was under 18 years of age at the time of his or her controlling offense" shall be provided a "[a] youth offender parole hearing . . . for the purpose of reviewing the [prisoner's] parole suitability . . . ." (§ 3051, subd. (a)(1).) "A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is a life term of 25 years to life shall be eligible for release on parole by the

board during his or her 25th year of incarceration at a youth offender parole hearing . . . ." (§ 3051, subd. (b)(3).)[5]

The Attorney General argues the enactment of section 3051 and Spivey's eligibility for a parole hearing when he is in his early 40's effectively cures any possible constitutional violation based on Spivey's claim he is serving the functional equivalent of a sentence of life without parole without the sentencing court having analyzed his relative culpability using the *Miller* factors. Although this issue is currently before the California Supreme Court,[6] in *Gutierrez, supra,* 58 Cal.4th 1354, the Court recently rejected the assertion that section 1170, subdivision (d)(2)—providing a juvenile offender sentenced to life without the possibility of parole for murder may seek recall of his or her sentence after 15 to 24 years —"removes life without parole sentences for juvenile offenders from the ambit of *Miller*'s concerns because the statute provides a meaningful opportunity for

---

[5]    Juvenile offenders with determinate sentences of any length are entitled to a youth offender parole hearing during their 15th year of incarceration. (§ 3051, subd. (b)(1).) Juvenile offenders sentenced to life terms of less than 25 years to life will participate in a youth offender parole hearing during their 20th year of incarceration. (§ 3051, subd. (b)(2).)

[6]    The California Supreme Court has granted review in a number of cases involving the effect, if any, of the enactment of section 3051 on the claim a de facto sentence of life without the possibility of parole violates the Eighth Amendment: *In re Alatriste and Bonilla* (2013) 220 Cal.App.4th 1232, review granted Feb. 19, 2014, S214652 (*Alatriste*), S214960 (*Bonilla*) (upholding 77-year-to-life and 50-year-to-life sentences in light of section 3051's provision for parole hearings); *People v. Martin* (2013) 222 Cal.App.4th 98, review granted Mar. 26, 2014, S216139 (sentence of two consecutive life terms constitutional given section 3051's provision for a youth offender parole hearing); *In re Heard* (2014) 223 Cal.App.4th 115, review granted Apr. 30, 2014, S216772 (term of 80 years to life plus 23 years unconstitutional; matter remanded for resentencing); *People v. Solis* (2014) 224 Cal.App.4th 727, review granted June 11, 2014, S218757 (court modified sentence to reflect defendant's entitlement to a parole hearing after serving 25 years in prison); *People v. Franklin* (2014) 224 Cal.App.4th 296, review granted June 11, 2014, S217699 (section 3051 moots challenge to de facto life term of 50 years to life) and *People v. Gonzalez* (2014) 225 Cal.App.4th 1296, review granted July 23, 2014, S219167 (50 years to life term not unconstitutional because section 3051 effectively modified the sentence to afford the defendant a parole date well within his life expectancy).

7

such offenders to obtain release." (*Gutierrez*, at p. 1386.)[7] Rather, the Court observed, "*Miller* repeatedly made clear that the sentencing authority must . . . consider[] how children are different and how those differences counsel against a sentence of life without parole '*before* imposing a particular penalty.'" (*Id.* at p. 1387.) Accordingly, the Court directed sentencing courts, in exercising their discretion, to consider at the outset of the hearing, "all relevant evidence bearing on the 'distinctive attributes of youth' discussed in *Miller* and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders'" before imposing a life without parole sentence. (*Id.* at pp. 1389-1390.)

We believe the same rationale applies to cases that fall within the ambit of section 3051: Under *Miller* and *Caballero* it is the responsibility of the sentencing court to consider the differences between juveniles and adults at the time of imposing an actual life without parole sentence or its functional/practical equivalent. The opportunity for a parole hearing 25 years later based on the inmate's conduct during an extended period of incarceration should not relieve the trial court of its constitutional obligation to consider the factors of youth and maturity when pronouncing judgment. (Cf. *Gutierrez, supra*, 58 Cal.4th at pp. 1386-1387 ["it is doubtful that the potential to recall a life without parole sentence based on a future demonstration of rehabilitation can make such a sentence any more valid when it was imposed. If anything, a decision to recall the sentence pursuant to section 1170(d)(2) is a recognition that the initial judgment of incorrigibility underlying the imposition of life without parole turned out to be erroneous"].) Indeed, as several of our colleagues have previously observed, because the Legislature is free to repeal section 3051, there is no guarantee the promise of a youth

---

[7]      Section 1170, subdivision (d)(2), provides: "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for recall and resentencing."

8

offender parole hearing will be fulfilled when Spivey will be eligible to try to benefit from it.

2. *Remand for Resentencing Is Necessary*

Spivey's aggregate indeterminate sentence of 65 years to life is the functional equivalent of a sentence of life without parole within the meaning of *Caballero, supra,* 55 Cal.4th 262: He will be almost 83 years old at the time of his minimum parole eligibility date. (See *People v. Mendez* (2010) 188 Cal.App.4th 47, 63 [life expectancy of 18-year-old American male is 76 years]; see also Note*, How Long Is Too Long?: Conflicting State Responses to De Facto Life Without Parole Sentences After* <u>Graham v. Florida</u> *and* <u>Miller v. Alabama</u> (2014) 82 Fordham L.Rev. 3439, 3460 [discussing Iowa Supreme Court decision ruling "under standard mortality tables, [juvenile offender's] life expectancy [was] 78.6 years"].) Although Spivey's natural life expectancy—based on various demographic factors—may exceed 83 years by a short period, *Miller* and *Caballero* require a sentencing court to consider the mitigating factors relating to the distinctive attributes of a juvenile offender when imposing an aggregate sentence that, as here, may require him or her to spend all, or nearly all, of the rest of his or her life in prison. (See *People v. Perez* (2013) 214 Cal.App.4th 49, 57 ["[t]here is a bright line between LWOP's and long sentences *with* eligibility for parole *if* there is some meaningful life expectancy left when the offender becomes eligible for parole"].)

To be sure, as the Attorney General argues, when it originally sentenced Spivey in 2010, the trial court considered Spivey's age and criminal history, as reflected in the probation report, as well as the remarks of Spivey's mother. Yet it did so without the benefit of the analysis in *Miller, supra,* 567 U.S. __ and *Gutierrez, supra,* 58 Cal.4th 1354; and the probation report, which we have reviewed, did not include a discussion of all the pertinent *Miller* factors. When it resentenced Spivey in September 2013 following our remand, the court simply stated it was adopting its prior reasoning for imposing a consecutive sentence on count 3. Under these circumstances the proper course is to reverse the judgment with respect to the sentence imposed on Spivey for shooting at an inhabited dwelling for the benefit of a criminal street gang and to remand for sentencing

9

on that count in accordance with *Miller* and *Gutierrez*. (See *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482.)[8]

We express no opinion on how the trial court should weigh the factors discussed in *Miller* and *Gutierrez* on remand or whether the term of 15 years for shooting at an inhabited dwelling for the benefit of a criminal street gang should be imposed to run consecutively or concurrently.

## DISPOSITION

The judgment is reversed with respect to the consecutive sentence imposed for shooting at an inhabited dwelling pursuant to section 186.22, subdivision (b)(4)(B) (count 3), and the matter remanded for resentencing as to that count in accordance with the views expressed in this opinion.


PERLUSS, P. J.

We concur:


ZELON, J.


SEGAL, J.[*]


---

[8]     *Miller, supra,* 567 U.S. ___ was decided by the United States Supreme Court on June 25, 2012, shortly after we filed our modified opinion in Spivey's initial appeal directing the trial court on remand to impose either a consecutive or concurrent indeterminate term of 15 years to life for shooting at an inhabited dwelling with a true finding the offense had been committed for the benefit of a criminal street gang. *Caballero, supra,* 55 Cal.4th 262 was decided by the California Supreme Court two months later. Although Spivey raised no Eighth Amendment claim at the time of his original sentencing or in his initial appeal to this court, he presented that issue to the trial court in his sentencing memorandum on remand, citing both *Miller* and *Caballero*. The Attorney General does not argue the issue has been forfeited. We agree.

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.